IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 7:14CR00033 |
| | (Civil Action No. 7:19CV81384) |
| v. | |
| | **MEMORANDUM OPINION** |
| WILLIAM ANTHONY BECKS, | |
| | By: Hon. Glen E. Conrad |
| Defendant. | Senior United States District Judge |

William Anthony Becks, by counsel, has moved to vacate his federal conviction and sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, to which Becks has responded, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted and Becks' motion to vacate will be denied.

## Background

On November 13, 2013, the Roanoke, Virginia field office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arranged for a confidential informant to make a controlled purchase of cocaine base from Becks. ECF No. 93-1 at 1.[1] Task force officers Andrew Ashby and Craig Frye supervised the confidential informant, and three ATF agents assisted in monitoring the controlled purchase. Id. The controlled purchase occurred at Becks' residence, and the officers used recording equipment to monitor the transaction. Id. at 1–2. Following the controlled purchase, Ashby searched the confidential informant's vehicle, while another task force officer searched the confidential informant. Id. at 2. Ashby then conducted a field test of the substance purchased from Becks. Id. The substance tested positive for cocaine and weighed more than 28 grams. Id.

---

[1] All page citations refer to the pagination assigned by the court's CM/ECF system.

On December 18, 2013, Ashby and Frye supervised another controlled purchase of cocaine base from Becks. Id. at 3. Nine other agents or officers assisted in monitoring the controlled purchase. Id. They used a confidential informant to buy two ounces of cocaine base from Becks. Id. The controlled purchase occurred at Becks' residence, and the confidential informant wore a recording device. Id. Following the controlled purchase, Frye searched the confidential informant's vehicle, while another officer searched the confidential informant. Ashby then conducted a field test of the substance purchased from Becks. Id. at 4. The substance tested positive for cocaine and weighed more than 28 grams. Id.

Based on the controlled purchases, a federal grand jury returned a two-count indictment against Becks on May 15, 2014. ECF No. 3. Both counts of the indictment charged Becks with distribution of 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Id. According to the government's motion, Frye testified before the grand jury. ECF No. 93 at 5. He also appeared at Becks' arraignment and detention hearing. ECF Nos. 10, 20.

On August 18, 2014, Becks entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. ECF No. 30. In exchange for his guilty plea, the government agreed to dismiss Count Two of the indictment. Id. at 2. In an agreed statement of facts filed in support of his plea, Becks admitted to all of the facts associated with the November 13, 2013, controlled purchase, including the fact that "it was Becks who sold the cocaine base to the informant." Id. ECF No. 32 at 2.

In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR"). ECF No. 99. The probation officer determined that Becks was responsible for between 28 and 112 grams of cocaine base, which would have resulted in a base offense level of 24 under the United States Sentencing Guidelines. Id. at ¶ 11. However, based on prior felony convictions

for controlled substance offenses, Becks qualified for sentencing as a career offender under § 4B1.1 of the Guidelines. Id. at ¶ 17. That designation, coupled with the offense statutory maximum, produced a base offense level of 34 and a criminal history category of VI. Id. ¶¶ 17, 39; see also U.S.S.G. § 4B1.1(b). After receiving credit for acceptance of responsibility, Becks' Guidelines range was 188 to 235 months of imprisonment.

Becks appeared for sentencing on December 9, 2014. At that time, the court adopted the PSR in its entirety, including the determination that Becks qualified for sentencing as a career offender. ECF No. 49 at 1. However, the court found that the career offender designation overstated Becks' criminal history. Id. at 2. Accordingly, the court departed from the Guidelines range and sentenced Becks to a term of imprisonment of 132 months. Id.; see also ECF No. 48. Becks did not appeal his conviction or sentence.

On July 12, 2019, Becks moved to vacate his conviction and sentence under 28 U.S.C. § 2255. The motion is based on Frye's participation in the investigation and prosecution of his case. In April of 2018, over three years after Becks was convicted and sentenced, the government filed a motion seeking disclosure of grand jury materials and potential impeachment materials related to Frye. ECF No. 57. The court granted the motion on May 16, 2018. ECF No. 75.

Becks' § 2255 motion recounts much of the information disclosed about Frye, as does the government's motion to dismiss. The complaints about Frye included concerns over not following proper procedures and protocols for handling informants and drug information, making disrespectful and offensive comments about women and minority groups, making false statements in court proceedings, and not reporting expunged arrest and charge information. See ECF No. 93 at 9–10. Based on its investigation of Frye's alleged misconduct, the United States Attorney's Office

determined that it would no longer sponsor Frye's testimony in federal court. Id. at 6. Frye was removed from the ATF task force in June of 2017. Id.

Although none of the alleged misconduct was related to his case, Becks argues that he should be allowed to withdraw his guilty plea to the drug offense charged in Count One of the indictment. Becks claims that Frye played an instrumental role in securing the charges against him and suggests that he would not have pled guilty if he had known about the information bearing on Frye's credibility.

## Standards of Review

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack his sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The court may resolve a § 2255 motion without conducting an evidentiary hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). In such a circumstance, the facts must be considered "in the light most favorable to the § 2255 movant." Id. However, speculative or conclusory allegations do not entitle a movant to an evidentiary hearing, much less relief under § 2255. See United States v. Roane, 378 F.3d 382, 400–01 (4th Cir. 2004) (noting that "conclusory assertions" or "airy generalities" are insufficient "to stave off summary judgment or entitle a habeas petitioner

4

to an evidentiary hearing") (internal quotation marks, alteration, and citation omitted); see also Jones v. Polk, 401 F.3d 257, 269 (4th Cir. 2005) ("[A] federal habeas court is permitted to hold [an evidentiary] hearing only if the petitioner alleges additional facts that, if true, would entitle him to relief.") (internal quotation marks and citation omitted) (second alteration in original).

## Discussion

"It is the general rule that '[w]hen a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea, and thus has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea.'" United States v. Fitzgerald, 820 F.3d 107, 110 (4th Cir. 2016) (alteration in original) (quoting United States v. Smith, 640 F.3d 580, 591 (4th Cir. 2011)); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). A guilty plea "represents a break in the chain of events which has preceded it in the criminal process." Tollett, 411 U.S. at 267. "Thus, the defendant who has pled guilty has no non-jurisdictional ground upon which to attack the judgment except the inadequacy of the plea or the government's power to bring any indictment at all." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (internal quotation marks and citations omitted).

Although it is not entirely clear from Becks' briefs, he appears to argue that his guilty plea is constitutionally invalid for two reasons: (1) the government failed to meet its evidentiary disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963); and (2) Frye's pre-plea misconduct rendered his guilty plea involuntary under United States v. Fisher, 711 F.3d 460 (4th Cir. 2013),

which interpreted and applied Brady v. United States, 397 U.S. 742 (1970).[2] The court will address each argument in turn.

## I. Claim under Brady v. Maryland

Becks first appears to argue that the government violated its disclosure obligations under Brady v. Maryland, rendering his guilty plea invalid. In Brady v. Maryland, the Supreme Court held that the prosecution's failure to disclose evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Supreme Court has since held that the duty encompasses impeachment evidence as well as exculpatory evidence, Giglio v. United States, 405 U.S. 150, 154 (1972), and that it includes evidence that is "known only to police investigators and not to the prosecutor," Kyles v. Whitley, 514 U.S. 419, 438 (1995). "The Brady[ v. Maryland] right, however, is a trial right," which "exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty." Moussaoui, 591 F.3d at 285 (emphasis omitted). "When a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted." Id.

The court agrees with the government that Becks has no basis under Brady v. Maryland upon which to withdraw his guilty plea. In United States v. Ruiz, the Supreme Court explained that the right to receive material impeachment evidence is "a right that the Constitution provides as part of its basic 'fair trial guarantee,'" and that when a defendant pleads guilty, he "forgoes not only a fair trial, but also other accompanying constitutional gurantees." 536 U.S. 622, 628 (2002). The Court rejected the claim that a guilty plea was involuntary merely because the prosecution failed to disclose material impeachment information to the accused prior to his plea of guilty. Id. at 629.

---

[2] To avoid confusion, the court will refer to each Brady decision by its full name.

The Court concluded that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." Id. at 633. Thus, "Ruiz established that impeachment material need only be disclosed for trial." Robertson v. Lucas, 753 F.3d 606, 621 (6th Cir. 2014) (emphasis omitted); see also United States v. Brown, 576 F. App'x 145, 148 (4th Cir. 2014) (per curiam) ("Here, because no trial occurred, Brown may not assert a constitutional violation [under Brady v. Maryland].").

The undisclosed evidence at issue in this case is precisely that addressed in Ruiz—impeachment evidence. Becks does not contend that the government withheld evidence that would exculpate him of the charged offenses or otherwise establish his innocence. Instead, Becks claims that had he known of Frye's misconduct in other cases, he would have used the information to impeach Frye's credibility at trial. See ECF No. 94 at 1 (referring to the nondisclosed evidence at issue as "impeachment information"). Because Becks entered a plea of guilty rather than proceeding to trial, his claim of error based on Brady v. Maryland is foreclosed by Ruiz.[3]

---

[3] In reaching this decision, the court rejects Becks' contention that Ruiz should be limited to its facts. Although the defendant in Ruiz was originally offered a "fast track" plea agreement, the Supreme Court did not limit its holding to "fast track" cases. Instead, the Court framed the issue in much broader terms, stating as follows:

> In this case, the Ninth Circuit in effect held that a guilty plea is not "voluntary" (and that the defendant could not, by pleading guilty, waive her right to a fair trial) unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted upon a trial. We must decide whether the Constitution requires that preguilty plea disclosure of impeachment information. We conclude that it does not.

Ruiz, 536 U.S. at 629. Likewise, the court's holding is broadly drafted and contains no limiting language. See id. at 633 (concluding that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").

II.     **Claim under Brady v. United States and United States v. Fisher**

Becks also appears to argue that Frye's pre-plea misconduct tainted his guilty plea, rending it involuntary. In Brady v. United States, the Supreme Court outlined the following standard for considering the voluntariness of a guilty plea:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. at 755 (alteration omitted). In United States v. Fisher, the United States Court of Appeals for the Fourth Circuit interpreted this standard to require proof of two elements: (1) that "some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea"; and (2) that "the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." 711 F.3d at 465 (emphasis, internal quotation marks, and citation omitted). For the following reasons, the court concludes that neither element has been met in this case.

First, Becks does not identify any pre-plea action taken by Frye that rises to the level of "egregiously impermissible conduct" described in Fisher. In that "extraordinary case," the task force officer responsible for investigating the defendant made false statements in an affidavit used to secure a search warrant for the defendant's residence. 711 F.3d at 462, 466. During the ensuing search, officers discovered evidence that formed the basis of the charge to which the defendant pled guilty. Id. Over a year after the defendant pled guilty, the task force officer was charged with fraud and theft offenses related to his duties as an officer. Id. at 463. He subsequently "admitted that his search warrant affidavit [in the defendant's case] contained a deliberate falsehood." Id. at 468. On

appeal from the denial of a motion to vacate, the Fourth Circuit held that "the officer's affirmative misrepresentation, which informed the defendant's decision to plead guilty and tinged the entire proceeding, rendered the defendant's plea involuntary and violated his due process rights." Id. at 462. In reaching its decision, the Court emphasized that the case was not one in which the defendant sought to withdraw his guilty plea merely because he misapprehended the quality of the government's case against him. Id. at 466. Instead, the case presented "highly uncommon circumstances in which gross police misconduct [went] to the heart of the prosecution's case." Id.

The circumstances here differ significantly from those in Fisher. Most notably, there is no link between Frye's alleged misconduct and the drug charge to which Becks pled guilty. Becks does not allege that Frye provided false testimony in this case or that he provided any false statements in the course of investigating Becks. Instead, Becks suggests that evidence of misconduct in other cases would have impeached Frye's credibility and potentially weakened the government's case against him. See ECF No. 94 at 6 (emphasizing that the government's position "fails to take into account the impact that a corrupt witness could have on a finder of fact"). Under existing precedent, however, a guilty plea is not rendered involuntary "merely because [the defendant] discovers long after the plea has been accepted that his calculus misapprehended the quality of the [government's] case." Brady v. United States, 397 U.S. at 757. "It is only when the misapprehension results from some particularly pernicious form of impermissible conduct that due process concerns are implicated." Ferrara v. United States, 456 F.3d 278, 291 (1st Cir. 2006), quoted with approval in Fisher, 711 F.3d at 466.

Such conduct is lacking here. Becks does not identify any action by Frye that could be described as "egregiously impermissible conduct" that "goes to the heart of the prosecution's case." Fisher, 711 F.3d at 465–466. Accordingly, he is unable to satisfy the first prong of the test for

establishing that his guilty plea was involuntary. Id.; see also United States v. Traxel, No. 7:13-cr-0009, 2020 U.S. Dist. LEXIS 117263, at *14–*15 (W.D. Va. July 1, 2020) (Urbanski, C.J.) (holding that the defendant could not show that he was entitled to relief from his guilty plea since he had "not provided any link between Frye's claimed undisclosed misconduct and the drug and firearm charge to which [the defendant] pled guilty" or pointed to any "actions taken by Frye that could be described as unexcusable conduct"); United States v. Carlos, No. 7:11-cr-00029, 2020 U.S. Dist. LEXIS 116912, at *12 (W.D. Va. July 1, 2020) (Urbanski, C.J.) (concluding that the defendant's "allegations of misconduct by Frye [in other cases were] not sufficiently serious to warrant setting aside his guilty plea").

Moreover, even if Becks could establish the first element identified in Fisher, he has not shown that Frye's misconduct was material to his decision to plead guilty. To satisfy the materiality prong, a defendant "must show 'a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial.'" Fisher, 711 F.3d at 467 (quoting Ferrara, 456 F.3d at 294); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985). Importantly, the defendant's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). Because this is an objective test, the defendant "cannot make that showing merely by telling [the court] now that [he] would have gone to trial . . . ." Christian v. Ballard, 792 F.3d 427, 452 (4th Cir. 2015) (alterations in original) (quoting Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012)). Instead, the defendant "must show that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty, had he known about the [the officer's] misconduct." Fisher, 711 F.3d at 467. For the following reasons, Becks is unable to satisfy this requirement.

10

First, separate and apart from Frye's testimony, the government possessed overwhelming evidence of Becks' guilt. Becks pled guilty to Count One of the indictment, which was based on the November 13, 2013, controlled purchase by a confidential informant. As indicated above, the controlled purchase occurred at Becks' residence, Ashby co-supervised the confidential informant during the controlled purchase, and three other law enforcement officers assisted in monitoring the transaction. Following the controlled purchase, Ashby and another officer searched the confidential informant's vehicle and person. Ashby was also responsible for conducting a field test of the substance purchased, weighing the substance, and recording a statement from the confidential informant concerning the informant's involvement in the transaction. Thus, while Frye was clearly involved in the investigation, his testimony was not necessary to establish Becks' guilt.

Second, Becks clearly benefitted from pleading guilty. By doing so, Becks obtained the dismissal of a second charge and limited his potential sentence. Had Becks been convicted at trial on one or both counts and not received credit for acceptance of responsibility, he would have faced a recommended term of imprisonment of 262 to 327 months under the Sentencing Guidelines. Under these circumstances, Becks "cannot show that declining to plead guilty 'would have been rational under the circumstances.'" Fugit, 703 F.3d at 260 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)); see also Pilla, 668 F.3d at 373 (holding that no rational defendant in the defendant's position would have proceeded to trial where the defendant "faced overwhelming evidence of her guilt" and "would have faced a longer term of incarceration" if she had proceeded to trial); Traxel, 2020 U.S Dist. LEXIS 117263, at *17 ("Given the other evidence against him and the lengthy sentence he faced had he gone to trial, the court does not find that it is objectively reasonable to conclude that had [the defendant] known of Frye's misconduct that he would have

chosen to go to trial rather than plead guilty."). Accordingly, Becks is not entitled to have his plea set aside as involuntary.

## Conclusion

For the reasons stated, the record conclusively shows that Becks is not entitled to relief under § 2255. Accordingly, the court will grant the government's motion to dismiss and deny Becks' motion. Additionally, because Becks has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 23rd day of April, 2021.

_____
Senior United States District Judge